UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

VICTOR ALEXANDER,                          :

                    Petitioner,            :      05 Civ. 9020 (WHP)(HBP)

        -against-                          :      REPORT AND
                                                  RECOMMENDATION
SUPERINTENDENT SUSAN CONNELL,              :

                    Respondent.            :

----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: _4·9·2010_

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE WILLIAM H. PAULEY, III, United States

District Judge,

I.   Introduction

          Petitioner Victor Alexander seeks, by his pro se

petition for a writ of habeas corpus pursuant to 28 U.S.C.

Section 2254, an Order vacating the sentence imposed on him on

June 19, 2003, on his guilty plea entered June 3, 2003, by the

Supreme Court of the State of New York, Bronx County (Newman,

J.), for one count of burglary in the first degree, in violation

of New York Penal Law Section 140.30(3).  Petitioner was sen-

tenced to an eight-year term of imprisonment and five years of

post-release supervision.  The Court also issued an order of

protection prohibiting petitioner from having contact with the

complaining witness or her children for eleven years from the date of petitioner's sentencing.  Petitioner is currently under parole supervision.

For the reasons set forth below, I respectfully recommend that the petition be denied.

II.  Facts

A.  Facts Giving Rise to
Petitioner's Conviction

On September 19, 2002, petitioner and an accomplice who has never been apprehended broke in to the home of Latisha Briggs.  Briggs and her two young children were present at the time of the break in, and one of the perpetrators displayed a knife and tied up Ms. Briggs and her children using duct tape. Petitioner and his accomplice took jewelry, a cellular telephone and a cordless telephone (Petitioner's Brief to the Appellate Division of the Supreme Court, dated March 12, 2004 ("Pet. App. Brf.") at 3, annexed as Exhibit 7 to the Affidavit of Assistant District Attorney Nancy D. Killian, Esq., sworn to March 7, 2008 ("Killian Aff."); Respondent's Brief to the Appellate Division of the Supreme Court, dated April 2004 ("Resp. App. Brf."), at 3, annexed as Exhibit 8 to the Killian Aff.; Decision and Order of the Honorable Barbara F. Newman, Acting Supreme Court Justice,

2

dated February 15, 2005 ("440.10 Dec'n") at 3, annexed as Exhibit
13 to the Killian Aff.).

The police arrested petitioner for the break in.   The
police recovered Ms. Briggs' jewelry and a blackjack from peti-
tioner at the time of his arrest.   In addition, petitioner
confessed to participating in the offense to the police (Affirma-
tion of Warren C. Herland, Esq., dated Jan. 18, 2005 ("Herland
Aff."), at ¶¶ 3-4, annexed as Exhibit 1 to the Killian Aff.).
Petitioner was subsequently indicted and charged with with
burglary in the first, second and third degree, robbery in the
first and second degree, criminal possession of a weapon in the
fourth degree, unlawful imprisonment in the first degree and
endangering the welfare of a child (Resp. App. Brf. at 3, annexed
as Ex. 8 to the Killian Aff.).

On or about March 24, 2003, petitioner rejected an
initial plea offer from the Trial Court of a sentence of ten
years' imprisonment for a guilty plea to one count of burglary in
the first degree, and instructed his attorney to seek a more
lenient offer (Herland Aff. ¶ 5, annexed as Ex. 1 to the Killian
Aff.).   The Trial Court initially declined defense counsel's
request, citing the aggravated nature of the charges against
petitioner (Herland Affirm. ¶ 6, annexed as Exhibit 1 to the
Killian Aff.).   On May 28, 2003, however, the Trial Court agreed

3

to amend the offer, reducing the offered sentence to eight years
(Herland Aff. ¶ 8, annexed as Exhibit 1 to the Killian Aff.).

On June 3, 2003, after an off-the-record discussion
between petitioner's attorney and the prosecutor and several
conversations between petitioner and his attorney, and after
petitioner acknowledged to his attorney that he realized there
was a high likelihood of conviction and a more severe sentence,
petitioner advised his attorney that he would accept the plea
offer of 8 years imprisonment (Herland Aff. ¶ 9, annexed as
Exhibit 1 to the Killian Aff.). As noted above, on that date,
petitioner pleaded guilty to one count of burglary in the first
degree and waived his right to appeal in return for a determinate
sentence of eight years imprisonment, five years post-release
supervision and an order of protection (Transcript of Proceed-
ings, dated June 3, 2003 ("Plea Tr."), at 2-11, annexed as
Exhibit 2 to the Killian Aff.).

Prior to accepting petitioner's plea, the Trial Court
placed petitioner under oath and asked the following questions to
ensure that the plea was knowing and voluntary:

> THE COURT:    Mr. Alexander, your lawyer says on this
> case . . . that you are pleading guilty
> to a B violent felony crime called "bur-
> glary in the first degree."
>
> Is that what you're doing sir?

4

THE DEFENDANT: Yes, Your Honor.

THE COURT:     Have you had enough time to talk about
               this case with your lawyer?

THE DEFENDANT: Yes, Your Honor.

THE COURT:     Did anybody force you or threaten you or
               pressure you in any way to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT:     You realize that when you plead guilty
               now, Mr. Alexander, you admit that on or
               about September 19, 2002, in the Bronx,
               you, acting together with another per-
               son, knowingly and unlawfully entered
               into the dwelling of a woman named
               "Latisha Briggs" with the intent to
               commit a crime therein and, in effecting
               entry, or while in the dwelling or imme-
               diate flight therefrom, either you or
               the person with whom you were acting in
               concert, used or threatened the immedi-
               ate use of a dangerous instrument, that
               being a knife?  That's what you're ad-
               mitting by the plea.

               Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

[THE COURT]:   And is it true that you did that?

THE DEFENDANT: Yes, Your Honor.

THE COURT:     Do you know that you have the right to
               have a trial and you're giving up that
               right by pleading guilty?

THE DEFENDANT: Yes, Your Honor?

THE COURT:     Do you know that you have the right to
               remain silent and you're giving up that
               right by pleading guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT:      Do you know that you have the right to
                have your lawyer confront and cross-
                examine witnesses for you and you're
                giving up that right by pleading guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT:      And do you know that you have the right
                to have the People prove you guilty
                beyond a reasonable doubt and you're
                giving up that right by pleading guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT:      Also, your lawyer says that he has dis-
                cussed with you, and you're giving up,
                your right to appeal the plea, the sen-
                tence promised and any other decisions
                in this case.

                Is that true also, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT:      Now, I've made the following promise to
                you:

                I promise you a sentence of a term of
                imprisonment of eight years flat, plus
                an order of protection, which requires
                that you have no contact with the com-
                plaining witness, Miss Briggs, or her
                children; and if you violate that order
                of protection when you get out of jail
                and if you're found guilty of contempt
                on that order, you could go to jail on
                that.  Also, there will be five years of
                post-release supervision.

                Do you understand all of that, sir?

THE DEFENDANT: Yes, Your Honor.

6

THE COURT:       And did anybody tell you the sentence
                 would be different that what I just
                 discussed with you?

THE DEFENDANT:  No.

THE COURT:       Is there anything that I said that you
                 don't understand?

THE DEFENDANT:  I understand everything.

THE COURT:       Is there any question that you would
                 like to ask me about this process?

THE DEFENDANT:  No, Your Honor.

                      *       *       *

THE COURT:       So, Mr. Alexander, is it true that the
                 address of the apartment that you en-
                 tered on that date was 837 Longfellow
                 Avenue, Apartment 5-C, in the Bronx?

THE DEFENDANT:  I don't know.  I never been there be-
                 fore.  I mean, that's the first time.
                 If that's the address they said it was,
                 yes, that's what it was.

THE COURT:       That's where you did what I just talked
                 to you about?

THE DEFENDANT:  All right.

THE COURT:       Pardon me?

THE DEFENDANT:  Yeah.

(Plea Tr. at 6-10, annexed as Exhibit 2 to the Killian Aff.).

        The Trial Court sentenced petitioner on June 19, 2003

as promised to an eight year term of imprisonment and term of

post-release supervision of five years.  The Trial Court also

                              7

imposed an order of protection of eleven years (Transcript of
Proceedings, dated June 19, 2003, at 5, annexed as Exhibit 3 to
the Killian Aff.).

   B.   Post-Conviction
        Proceedings

        1.   Direct Appeal

        On March 12, 2004 petitioner, represented by new
counsel, filed a brief with the Appellate Division of the Supreme
Court for the First Department.   Petitioner's brief asserted two
claims:   (1) his purported waiver of his right to appeal was not
voluntary, knowing and intelligent, and was, therefore, invalid
and did not preclude petitioner's appeal, and (2) the sentence
should be reduced in the interests of justice because (a) peti-
tioner suffered from post-traumatic stress disorder ("PTSD") as a
result of his rescue work on September 11 and the subsequent
clean-up work, (b) petitioner had no prior felony convictions,
(c) petitioner had a history of steady employment, (d) petitioner
was the less culpable party in the crime and had expressed
genuine remorse, and (e) petitioner suffered from substance abuse
at the time of the offense (Pet. App. Br. at i, 7 and 15-16,

annexed as Exhibit 7 to the Killian Aff.).[1]  In support of his

former claim, petitioner argued

> During his plea proceeding, Mr. Alexander was
> asked only one question about waiving his right to
> appeal.  That question was asked in compound form,
> making it impossible to discern whether Mr. Alexander
> had been fully apprised of the consequences of waiving
> his right to appeal by his attorney, or whether he did
> so voluntarily, knowingly, and intelligently.  The
> court provided Mr. Alexander with no explanation of the
> consequences of a waiver of the right to appeal.  In
> addition, Mr. Alexander clearly demonstrated that he
> was simply providing rote responses to the court's
> questions during allocution without fully knowing the
> answers.  Finally, Mr. Alexander was suffering from
> Post-Traumatic Stress disorder at the time of his plea
> proceeding.  All these questionable conditions add up
> to a waiver of the right to appeal that is, at best,
> suspect.  As a result, that waiver is invalid and does
> not preclude this Court from reconsidering Mr. Alexan-
> der's harsh sentence in interests of justice, as dis-
> cussed in Point II, infra.

(Pet. App. Br. at 7, annexed as Exhibit 7 to the Killian Aff.).

The prosecution argued (1) that petitioner's claim that the

waiver of his right to appeal was not knowing, intelligent and

voluntary was itself unpreserved because petitioner had not moved

in the Trial Court to withdraw his plea or set aside his convic-

---

[1]At the same time petitioner filed his brief with the
Appellate Division, he also moved to expand the record on appeal
(Notice of Motion to the Appellate Division of the Supreme Court,
dated March 12, 2004, and accompanying exhibits, annexed as
Exhibit 4 to the Killian Aff.).  This motion was ultimately
denied (Killian Aff. ¶ 6) and is not material to the resolution
of the present petition.

tion (Resp. App. Brf. at 9, annexed as Exhibit 8 to the Killian
Aff.) and (2)  petitioner waived his right to appellate review
(Resp. App. Brf. at 9-12, annexed as Exhibit 8 to the Killian
Aff.).

On June 19, 2004, following oral argument, the Appel-
late Division unanimously affirmed petitioner's conviction and
sentence without opinion.  People v. Alexander, 8 A.D.3d 1131,
778 N.Y.S.2d 736 (1st Dep't 2004).

Petitioner then sought leave to appeal to the New York
Court of Appeals which denied petitioner leave to appeal on
August 3, 2004.  People v. Alexander, 3 N.Y.3d 669, 817 N.E.2d
826, 784 N.Y.S.2d 8 (2004).

### 2.  Motion to Vacate

On October 8, 2004, petitioner, proceeding pro se,
filed a motion to vacate his conviction pursuant to New York
Criminal Procedure Law Section 440.10, claiming that (1) he had
been denied the effective assistance of counsel based on his
counsel's failure to inform the Court that he suffered from PTSD
before he pled and (2) because he suffered from PTSD at the time
of his plea, his plea was not knowing, voluntary and intelligent
(Petitioner's § 440.10 Motion ("440.10 Motion"), annexed as
Exhibit 10 to the Killian Aff.).  Petitioner cited both the Sixth

10

and the Fourteenth Amendments of the United States Constitution in support of his claims (440.10 Motion at 7, annexed as Exhibit 10 to the Killian Aff.).

In support of his motion, petitioner attached (1) "Psychiatric and Mental Health Reports" from Rikers Island;[2] (2) fax cover sheets to demonstrate that his counsel had received reports and letters from social workers and mental health professionals, (3) the acceptance letters from residential treatment programs, (4) a letter from petitioner's former employer and (5) the Department of Probation's Pre-Sentence Report, which included a mental health "evaluation" indicating that petitioner suffered from PTSD, depression and had a history of drug and alcohol abuse but that petitioner was, nevertheless "intelligen[t] [and] capable of insight" (440.10 Motion at 2; Exhibits A, B, C & D to 440.10 Motion; Pre-Sentence Report at 7, all annexed as Exhibit 10 to the Killian Aff.).

In opposition to the motion, the prosecution submitted an affirmation from petitioner's trial counsel, Warren C. Herland, Esq., (Herland Aff., annexed as Exhibit 1 to the Killian Aff.), an affirmation from an Assistant District Attorney ad-

---

[2]Neither side has submitted these reports in this matter. However, for reasons explained below, it is not necessary to review these reports to resolve the claims in the petition.

dressing the prior proceedings in the case and a memorandum of law addressing certain legal issues (Exhibit 11 to the Killian Aff.)

Herland recited that his representation of petitioner commenced on March 7, 2003, and that he and petitioner thoroughly discussed the case and petitioner's mental health issues (Herland Aff. ¶¶ 1-3, annexed as Exhibit 1 the Killian Aff.). Petitioner asked Herland to engage in plea negotiations because petitioner, who had acknowledged his involvement in the crime to Herland, was concerned about the prosecution's evidence and the potential impact of the testimony of Ms. Briggs' children (Herland Aff. ¶¶ 3-5, annexed as Exhibit 1 to the Killian Aff.). Herland also reported that, in conformity with petitioner's request, he discussed petitioner's mental health problems with, and presented petitioner's Pre-Sentence Report to, the Trial Court for consideration; the Trial Court, however, "indicated that due to the nature of the offenses charged, no such report would serve to modify the [ten-year term of incarceration] offer extended to [petitioner]" (Herland Aff. ¶¶ 6, 9-10, 11, annexed as Exhibit 1 to the Killian Aff.). Herland subsequently succeeded in obtaining a plea offer from the Trial Court that reduced petitioner's term of incarceration from ten years to eight years (Herland Aff. ¶¶ 7-8, annexed as Exhibit 1 to the Killian Aff.). Herland

learned on June 3, 2003 that there was potential trial testimony
that petitioner participated in the duct taping of the children
(Herland Aff. ¶ 9, annexed as Exhibit 1 to the Killian Aff.).
Herland stated that these facts contributed to petitioner's
decision to plead guilty to first-degree burglary, noting in his
conclusion,

> [I] advocated for Mr. Alexander's interest and complied
> with his request not to take this indictment to trial.
> Mr. Alexander was suffering from no inability to care-
> fully weigh his options at the time he pled guilty to
> Burglary in the first degree. Mr. Alexander balanced
> the potential impact of the children's and other likely
> witness testimony and sought to minimize his own expo-
> sure by accepting the promise of 8 years incarceration.
> Mr. Alexander displayed no inability to understand the
> nature of the legal proceedings. All the relevant
> facts and circumstances were thoroughly discussed by
> Mr. Alexander and myself and Mr. Alexander knowingly
> and intelligently made what [I] believ[e] to have been
> the correct decision in this action.

(Herland Aff. ¶ 18, annexed as Exhibit 1 to the Killian Aff.).

In its memorandum of law, the prosecution argued, among
other things, that if petitioner was claiming his plea should be
vacated because the Trial Court failed to determine whether
petitioner's plea was knowing, voluntary and intelligent, the
claim should be dismissed pursuant to New York Criminal Procedure
Law Section 440.10(2)(c) because sufficient facts existed on the
record to permit petitioner to raise the claim on direct appeal
and he unjustifiably failed to do so (Memorandum of Law in

13

Opposition to 440.10 Motion at 9, annexed as Exhibit 11 to the
Killian Aff.).

Petitioner submitted a reply affidavit in further
support of his 440.10 motion, alleging, inter alia, that defense
counsel was also ineffective for failing to move for a competency
hearing (Affidavit in Reply to Respondent's Opposition to Defen-
dant's 440.10 Motion at ¶¶ 4-6, annexed as Exhibit 12 to the
Killian Aff.).

Justice Newman, who had previously accepted peti-
tioner's guilty plea and imposed sentence, issued a written
decision on February 15, 2005, denying petitioner's 440.10 motion
in its entirety (440.10 Dec'n, annexed as Exhibit 13 to the
Killian Aff.). Specifcally, Justice Newman found that

> Defendant's . . . motion to vacate the judgment of
> conviction must be summarily denied since the grounds
> raised therein were either previously determined on the
> merits upon appeal or, to the extent they were not
> determined, sufficient facts appeared upon the record
> of the plea proceedings to have permitted adequate
> appellate review of such grounds but for defendant's
> unjustifiable failure to raise them.  C.P.L. §
> 440.10(2)(a) and (2)(c).

(440.10 Dec'n at 4, annexed as Exhibit 13 to the Killian Aff.).

After noting that a Section 440.10(2)(a) bar is not
limited to situations in which the collateral claim is raised in
precisely the same language used on direct appeal, Justice Newman
found that if the "underlying error or flaw" raised in a defen-

14

dant's 440.10 motion is the same error or flaw raised on direct

appeal and resolved on the merits, subdivision (2)(a) precludes

relief (Dec'n at 4-6, annexed as Exhibit 13 to the Killian Aff.).

Applying this principal to petitioner's specific claim, Justice

Newman found:

> On the instant motion defendant contends that a
> "mental disease or defect," rendered him incapable of
> understanding the plea proceedings as a whole.  How-
> ever, the "mental disease or defect" he now complains
> of is the very same PTSD which he asserted on appeal.
> Furthermore, defendant's waiver of the specific right
> to appeal was merely a part of the same plea proceed-
> ings during which defendant waived a full panoply of
> rights, which induced this Court to accept his guilty
> plea.  Nor does defendant contend that he was any more
> or less competent or capable of understanding during
> one part of the allocution than another.  Thus, the
> underlying flaw which defendant now asserts as a ground
> to vacate the judgment of conviction on the instant
> motion that is the same PTSD rendered him incapable of
> understanding more of the same plea proceedings, i.e.,
> it is discenibly the same underlying flaw he asserted
> as a ground for vacatur on appeal.
>
> The Appellate Division denied defendant's appeal
> and affirmed the judgment of conviction without opin-
> ion.  People v Alexander, 8 A.D.3d 1131.  The decision
> of an appellate court which affirms a judgment of
> conviction without opinion constitutes a determination
> on the merits of the claims raised on the appeal within
> the meaning of C.P.L. § 440.10(2)(a). . . .  Therefore,
> the Appellate Division's decision consituted a determi-
> nation on the merits of defendant's claim that PTSD
> rendered him incapable of understanding the plea pro-
> ceedings.  Regardless of any disparity from the lan-
> guage used to frame the grounds argued on appeal,
> defendant's attempt to assert the same underlying flaw
> as grounds to vacate the judgment of conviction on the
> instant motion must be denied under C.P.L. §
> 440.10(2)(a).  People v Skinner, 154 A.D.2d 216.

15

(440.10 Dec'n at 6-7, annexed as Exhibit 13 to the Killian
Aff.).[3]

Justice Newman went on to note that even if the Appel-
late Division's finding that petitioner competently waived his
rights to appeal did not constitute a determination that peti-
tioner was competent under the plea proceedings as a whole,
petitioner's PTSD was noted in his pre-sentence report, and,
thus, there were sufficient facts in the record for petitioner to
raise his claim on direct appeal. Accordingly, even if the claim
were not actually resolved on the merits in petitioner's direct
appeal, it could have been raised on direct appeal, and, there-
fore had to be dismissed pursuant to N.Y. Crim. Proc. L. §
440.10(2)(c) (440.10 Dec'n at 7, annexed as Exhibit 13 to the
Killian Aff.).

Finally, Justice Newman noted that "even were the Court
not compelled to deny the motion summarily under C.P.L. §
440.10(2), it would do so on the merits" because petitioner
failed to provide the court with sufficient evidentiary facts to
support his allegation that he was mentally incompetent at the

---

[3]I have not over looked the fact that there is some tension
between Justice Newman's decision is inconsistent with the
subsequent decision of the New York Court of Appeals in People v.
Lopez, 6 N.Y.3d 248, 844 N.E.2d 1145, 811 N.Y.S.2d 623 (2006).
Because Lopez involved only state law issues, the apparent change
in state law is immaterial to the petitioner's claims.

time of his plea (440.10 Dec'n at 7-8, annexed as Exhibit 13 to
the Killian Aff.).

        With respect to petitioner's claim that defense counsel
was ineffective for failing to apprise the court of his mental
health condition, Justice Newman denied that claim as meritless
(440.10 Dec'n at 8, annexed as Exhibit 13 to the Killian Aff.).
Justice Newman found that petitioner's ineffective assistance
claim did not meet the two-part test set forth by the Supreme
Court in Strickland v. Washington, 466 U.S. 668, 689 (1984),
reasoning that, even if defense counsel had informed the Trial
Court of petitioner's PTSD diagnosis, the outcome of the proceed-
ings would have been the same because Justice Newman accepted
petitioner's plea only after a searching voir dire and only after
she had made an independent determination that petitioner was
mentally competent (440.10 Dec'n at 8-9, annexed as Exhibit 13 to
the Killian Aff.).

        Lastly, Justice Newman denied petitioner's claim that
counsel was ineffective for not requesting a competency hearing.
Although Justice Newman noted that this claim was not properly
raised because it was first asserted in petitioner's reply
papers, she did not rely on this ground to deny the claim (440.10
Dec'n at 10, annexed as Exhibit 13 to the Killian Aff.).  In-
stead, Justice Newman denied this claim on the merits, finding

17

that petitioner had not established any reasonable probability
that the outcome of the case would have been different had
defense counsel requested a competency hearing (440.10 Dec'n at
10, annexed as Exhibit 13 to the Killian Aff.).

The Appellate Division denied petitioner leave to
appeal Justice Newman's decision on September 22, 2005, and the
New York Court of Appeals dismissed petitioner's application for
leave to appeal from that denial on October 18, 2005 (Killian
Aff. ¶ 10).

### 3.   Petitioner's Claims

Petitioner filed his habeas corpus petition on or about
October 1, 2005 and asserts essentially the same claims he raised
in his motion to vacate, namely that (1) his guilty plea was not
knowing, voluntary or intelligent because he was on medication
and suffering from mental illness, and (2) as a result of defense
counsel's failure to "present[] to the [Trial] Court on record
that [petitioner] suffered from a mental disease or defect" and
counsel's failure to request a competency hearing, petitioner was
denied the effective assistance of counsel.  Respondent opposes
the petition on the grounds that petitioner's claims are either
procedurally barred or fail on the merits.

18

III.   Analysis

A.   Procedural Bar

A habeas petitioner's constitutional claim can be
procedurally barred if it is not asserted in the state courts in
accordance with state procedural requirements and the state
courts rely on that defect to reject the claim.  As the Court of
Appeals for the Second Circuit has explained:

> The independent and adequate state ground doctrine
> first arose in the context of direct appeals to the
> Supreme Court from final judgments of the state courts.
> Under that doctrine the Supreme Court "will not review
> a question of federal law decided by a state court if
> the decision of that court rests on a state law ground
> that is independent of the federal question and ade-
> quate to support the judgment."  Coleman v. Thompson,
> 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640
> (1991).  Moreover, "[t]his rule applies whether the
> state law ground is substantive or procedural."  Id.
>
>      . . . .
>
> The doctrine also applies in the context of fed-
> eral courts reviewing applications for a writ of habeas
> corpus . . . .  [I]nvoking principles of comity and
> federalism . . . federal habeas courts faced with an
> independent and adequate state ground of decision defer
> in the same manner as does the Supreme Court on direct
> review.

Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); see also

Garraway v. Phillips, 591 F.3d 72, 75 (2d Cir. 2010); Acosta v.

Artuz, 575 F.3d 177, 184 (2d Cir. 2009); Richardson v. Greene,

497 F.3d 212, 217 (2d Cir. 2007); Cotto v. Herbert, 331 F.3d 217,

19

239-41 (2d Cir. 2003); Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir.
2002) ("Absent a showing of cause and prejudice, it is settled
law that an independent and adequate state law ground for a state
court conviction cannot be disturbed on habeas."), citing Coleman
v. Thompson, 501 U.S. 722, 729-31 (1991); Brown v. State of New
York, 04-CV-1087 (NG)(VVP), 2006 WL 3085704 at *2 (E.D.N.Y. Oct.
30, 2006)("When a habeas corpus petitioner defaults a federal
claim in state court . . . by failing to preserve the claim for
state appellate review . . ., the independent and adequate state
ground doctrine bars federal habeas corpus review."); Rivera v.
Moscicki, 03 Civ. 5810 (SAS), 2005 WL 2347840 at *2 (S.D.N.Y.
Sept. 22, 2005) (Scheindlin, D.J.) ("A federal court generally
may not review a state court decision that expressly relies on a
procedural default as an independent and adequate state ground
for dismissal.").

Dismissal of a claim on the ground that consideration
of the merits is precluded by an adequate and independent state
procedural ground is appropriate where the last reasoned state
court decision expressly relies on a state procedural bar:

> In Harris[ v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103
> L.Ed.2d 308 (1989)], the Court held that "a procedural
> default does not bar consideration of a federal claim
> on either direct or habeas review unless the last state
> court rendering a judgment in the case clearly and
> expressly states that its judgment rests on a state
> procedural bar." Harris, 489 U.S. at 263, 109 S.Ct.

> 1038 (internal quotation marks omitted).  We apply the
> <u>Long/Harris</u> presumption to the last "reasoned state
> judgment" . . . .  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S.
> 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

<u>Jones v. Stinson</u>, 229 F.3d 112, 118 (2d Cir. 2000); <u>see</u> <u>also</u>

<u>Galarza v. Keane</u>, 252 F.3d 630, 637 (2d Cir. 2001) ("We have

repeatedly stated that in order for federal habeas review to be

procedurally barred, a state court must actually have relied on a

procedural bar as an independent basis for its disposition of the

case, and the state court's reliance on state law must be unam-

biguous and clear from the face of the opinion.").

As long as the state court clearly relies on a proce-

dural bar as an independent basis for its decision, a claim will

be procedurally barred on federal habeas review even if the state

court addresses the merits of the claim in the alternative.  As

the Court of Appeals has noted:

> This court has held that "federal habeas review is
> foreclosed when a state court has expressly relied on a
> procedural default as an independent and adequate state
> ground, even where the state court has also ruled in
> the alternative on the merits of the federal claim."
> <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990);
> <u>Harris</u>, 489 U.S. at 264 n.10, 109 S.Ct. at 1044 n.10
> ("[A] state court need not fear reaching the merits of
> a federal claim in an <u>alternative</u> holding."); <u>Wedra v.</u>
> <u>Lefevre</u>, 988 F.2d 334, 338-39 (2d Cir. 1993).

<u>Glenn v. Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996); <u>see</u> <u>also</u> <u>Fama</u>

<u>v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 810 (2d Cir. 2000);

<u>Robles v. Superintendent of Elmira Facility</u>, 07 Civ. 596 (LBS),

2007 WL 2600857 at *3 n.3 (S.D.N.Y. Aug. 30, 2007) (Sand, D.J.);
Ashley v. Burge, 05 Civ. 4497 (JGK), 2006 WL 3327589 at *5 n.5
(S.D.N.Y. Nov. 3, 2006) (Koeltl, D.J.).

       However, in order for federal review to be barred,
reliance on the state substantive or procedural ground must be
clear and must be express.  For example, where a state court "set
forth the factual predicate for a finding of procedural default,
[but] never actually stated that the issue was not preserved,"
there is no procedural bar, and the claim is subject to federal
habeas corpus review.  Jones v. Stinson, supra, 229 F.3d at 118;
accord Fama v. Comm'r of Corr. Servs., supra, 235 F.3d at 810;
Santorelli v. Cowhey, 124 F. Supp. 2d 853, 856 (S.D.N.Y. 2000)
(Parker, D.J.), aff'd, 4 F. App'x 78 (2d Cir. 2001).  Similarly,
a statement that a claim is unpreserved or without merit will not
give rise to a procedural bar.

> [W]e explicitly hold that when a state court uses
> language such as "[t]he defendant's remaining conten-
> tions are either unpreserved for appellate review or
> without merit," the validity of the claim is preserved
> and is subject to federal review.  When it uses such
> language, the state court has not adequately indicated
> that its judgment rests on a state procedural bar, see
> Harris, 489 U.S. at 263, 109 S.Ct. 1038, and its reli-
> ance on local law is not clear from the face of the
> court's opinion.  See Coleman, 501 U.S. at 735, 111
> S.Ct. 2546.

Fama v. Comm'r of Corr. Servs., supra, 235 F.3d at 810-11 (foot-
note omitted).

Respondent argues that petitioner's claim that his plea
was not knowing, intelligent and voluntary and his contention
that his trial counsel was ineffective for failing to request a
competency hearing are procedurally barred.  On close examina-
tion, however, I conclude that the authorities cited above compel
the conclusion that neither is procedurally barred.

Justice Newman rejected petitioner's claim that his
plea was not knowing, intelligent and voluntary, stating

> Defendant's . . . motion to vacate the judgment of
> conviction must be summarily denied since the grounds
> raised therein were either previously determined on the
> merits upon appeal or, to the extent they were not
> determined, sufficient facts appeared upon the record
> of the plea proceedings to have permitted adequate
> appellate review of such grounds but for defendant's
> unjustifiable failure to raise them.  C.P.L. §
> 440.10(2)(a) and (2)(c).

(440.10 Dec'n at 4, annexed as Exhibit 13 to the Killian Aff.).
New York Criminal Procedure Law Section 440.10(2)(a) prevents a
criminal defendant from asserting a claim in a state collateral
attack where the claim was actually asserted and rejected on the
defendant's direct appeal.[4]  New York Criminal Procedure Law

---

[4]New York Criminal Procedure Law Section 440.10(2)(a)
provides:

> 2.   Notwithstanding the provisions of subdivision
> one, the court must deny a motion to vacate a judgment
> when:

(continued...)

Section 440.10(2)(c) prevents a criminal defendant from asserting

a claim in a state collateral attack where there were sufficient

facts to have permitted the claim to be raised on direct appeal

but the defendant inexplicably failed to do so.[5]  Although there

are conflicting authorities on the subject, <u>see</u> <u>Garner v. Super-</u>

<u>intendent of Upstate Corr. Fac.</u>, 9:01-CV-0501 (LEK/DEP), 2007 WL

2846907 at *20-*21 (N.D.N.Y. Sept. 26, 2007) (collecting con-

flicting authorities), a decision based on Section 440.10(2)(a)

is generally considered a decision on the merits of the claim

---

[4](...continued)
> (a) The ground or issue raised upon the motion was
> previously determined on the merits upon an appeal from
> the judgment, unless since the time of such appellate
> determination there has been a retroactively effective
> change in the law controlling such issue . . . .

[5]Section 440.10(2)(c) provides:

> 2.   Notwithstanding the provisions of subdivision
> one, the court must deny a motion to vacate a judgment
> when:

>        *        *        *

> (c) Although sufficient facts appear on the record
> of the proceedings underlying the judgment to have
> permitted, upon appeal from such judgment, adequate
> review of the ground or issue raised upon the motion,
> no such appellate review or determination occurred
> owing to the defendant's unjustifiable failure to take
> or perfect an appeal during the prescribed period or to
> his unjustifiable failure to raise such ground or issue
> upon an appeal actually perfected by him . . . .

while a decision based on Section 440.10(2)(c) is generally

regarded as a procedural decision.[6]

_____

[6]As explained in <u>Taylor v. Kuhlmann</u>, 36 F. Supp. 2d 534, 546
(E.D.N.Y. 1999):

> "A dismissal under § 440.10(2)(a) is not based on
> any procedural default.  To the contrary, it is
> premised on a prior decision."  <u>Anderson v. Scully</u>, No.
> Civ. 90-0171, 1991 WL 156234 at *3 (Aug. 7, 1991
> S.D.N.Y.); <u>see also</u>, <u>Hartley v. Senkowski</u>, No. Civ.
> 90-0395, 1992 WL 58766 at *10 (Mar. 18, 1992 E.D.N.Y.)
> ("A procedural rule such as § 440.10(2)(a) acts neither
> as a procedural bar nor as a decision on the merits.").
> Thus, this "subsection applies only to claims that have
> been previously decided on the merits and does not
> constitute a state law ground for dismissal that is
> independent of the merits of petitioner's federal
> claims."  <u>Anderson</u>, 1991 WL 156234 at *3, <u>citing</u>, <u>Ylst</u>
> <u>v. Nunnemaker</u>, 501 U.S. 797, 111 S.Ct. 2590, 115
> L.Ed.2d 706 (1991).  Therefore, since the trial court
> expressly relied on CPL § 440.10(2)(a) to deny
> petitioner's application, it cannot be said that the
> court relied on a procedural bar, and this court is not
> precluded from turning to the merits of these two
> claims.

<u>See also</u> <u>Silverstein v. Henderson</u>, 706 F.2d 361, 368 (2d Cir.
1983)(finding that a rejection of a claim on the basis of Section
440.10(2)(a) "does not constitute a finding of procedural default
that would bar federal consideration of [petitioner's] claims");
<u>Velazquez v. Poole</u>, 04-cv-00478 (ENV)(CLP), 2007 WL 3240550 at
*22 n.29 (E.D.N.Y. Oct. 30, 2007); <u>Douglas v. Hollins</u>, 00 Civ.
7928 (MBM), 2004 WL 187130 at *6 n.5 (S.D.N.Y. Sept. 29, 2004)
(Mukasey, D.J.); <u>Guzman v. Couture</u>, 99 Civ. 11316 (RMB)(HBP),
2003 WL 165746 at *11 (S.D.N.Y. Jan. 22, 2003) (Berman, D.J.,
adopting Report & Recommendation of Pitman, M.J.).

Although there is authority for the proposition that
rejection of a claim pursuant to Section 440.10(2)(a) gives rise
to a procedural bar, <u>e.g.</u>, <u>Gillespie v. Miller</u>, 04 Civ. 0295
(LAP)(AJP), 2004 WL 1689735 at *14 & n.29 (S.D.N.Y. July 29,
                                                   (continued...)

Justice Newman's decision states that petitioner's claim concerning the voluntariness of his plea was subject to dismissal under either Section 440.10(2)(a) because it was previously raised on direct appeal and rejected or under Section 440.10(2)(c) because it could have been raised on direct appeal and wasn't. I find that this diction is indistinguishable from the holding in Fama v. Comm'r of Corr. Servs., supra, 235 F.3d at 810-11, that a decision stating that a claim is "either unpreserved for appellate review or without merit" does not clearly rely on state procedural grounds because Justice Newman does not suggest that one of the two grounds she cites is the primary basis for her decision. Justice Newman's decision does not, therefore, give rise to a procedural bar.

---

[6](...continued)
2004) (Peck, M.J.)(Report & Recommendation); Jones v. Miller, 03 Civ. 6993 (SHS)(GWG), 2004 WL 1416589 at *9 (S.D.N.Y. June 25, 2004) (Gorenstein, M.J.)(Report & Recommendation); Sykes v. Scully, 90 CV 4302 (SJ), 1992 WL 151896 at *2 (E.D.N.Y. June 16, 1992); Esquilin v. Walker, CV-91-4608 (CPS), 1992 WL 151903 at *3 (E.D.N.Y. June 16, 1992), aff'd, 990 F.2d 624 (2d Cir. 1993). I find that these authorities are not persuasive because a state court's rejection of a claim pursuant to Section 440.10(2)(a) is based on a prior state court's resolution of the claim on the merits and not on a defendant's failure to assert the claim in accordance with state procedural law. Thus, barring federal habeas review in such cases seems antithetical to the basis for the procedural bar doctrine; namely, a failure to assert a claim in accordance with state procedural requirements.

Petitioner's claim that his counsel was ineffective for failing to request a competency hearing is not procedurally barred because Justice Newman never expressly relied on a procedural bar. Although Justice Newman recited the procedural deficiencies in the manner in which petitioner raised this claim, she never expressly relied on those deficiencies to reject the claim (440.10 Dec'n at 10, annexed as Exhibit 13 to the Killian Aff.). Accordingly, pursuant to Jones v. Stinson, supra, 229 F.3d at 118, this claim is not procedurally barred.

B.    The Merits of
      Petitioner's Claims

1. Standard of Review

A habeas petitioner must meet a stringent standard before a federal court can issue the writ. Specifically, habeas relief may be granted only when the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

27

The Supreme Court has explained these alternative standards as follows:

> First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  See also Early v. Packer, 537 U.S. 3, 7-8 (2002) (per curiam). . . .
>
> Second, [petitioner] can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law.  As we have explained:
>
> > "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.  See Bell v. Cone, 535 U.S. 685, 698-699 (2002); Williams, supra, at 411.  Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."
>
> Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (per curiam).

Price v. Vincent, 538 U.S. 634, 640-41 (2003); accord Waddington v. Sarausad, --- U.S. ---, ---, 129 S.Ct. 823, 831 (2009); Brown v. Payton, 544 U.S. 133, 141 (2005); see also Lockyer v. Andrade, 538 U.S. 63, 70-72 (2003); Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006); Hawkins v. Costello, 460 F.3d 238, 242-43 (2d Cir. 2006); Brown v. Artuz, 283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable application" set forth above, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably extends a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule reasonably should apply." <u>Serrano v. Fischer</u>, 412 F.3d 292, 296-97 (2d Cir. 2005). "Unreasonableness is determined by an 'objective' standard." <u>Gersten v. Senkowski</u>, 426 F.3d 588, 607 (2d Cir. 2005), <u>quoting</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 409 (2000); <u>Hawkins v. Costello</u>, <u>supra</u>, 460 F.3d at 242-43.

Both the "contrary to" and "unreasonable application" clauses "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Williams v. Taylor</u>, <u>supra</u>, 529 U.S. at 412. "[C]learly established [f]ederal law . . . refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006) (internal quotations omitted); <u>accord</u> <u>Thaler v. Haynes</u>, 130 S. Ct. 1171, 1173 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court."). "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate

such a standard in a particular context."  Kennaugh v. Miller,

289 F.3d 36, 42 (2d Cir. 2002); Davis v. Grant, 532 F.3d 132, 140

(2d Cir. 2008), cert. denied, 129 S.Ct. 1312 (2009).  "A peti-

tioner can not win habeas relief solely by demonstrating that the

state court unreasonably applied Second Circuit precedent."  Yung

v. Walker, 341 F.3d 104, 110 (2d Cir. 2003); accord DelValle v.

Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002).

          A ruling that is clearly erroneous is not necessarily a

ruling that constitutes an unreasonable application of federal

law.  Lockyer v. Andrade, supra, 538 U.S. at 75 (The "objectively

unreasonable" and "clearly erroneous" standards "are not the

same.  The gloss of clear error fails to give proper deference to

state courts by conflating error (even clear error) with unrea-

sonableness."); Davis v. Grant, supra, 532 F.3d at 140; Cotto v.

Herbert, 331 F.3d 217, 248 (2d Cir. 2003).  However, "'the

increment [of error beyond clear error] need not be great;

otherwise, habeas relief would be limited to state court deci-

sions so far off the mark as to suggest judicial incompetence.'"

Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009), cert. denied,

130 S.Ct. 739 (2009), quoting Francis S. v. Stone, 221 F.3d 100,

111 (2d Cir. 2000).

          A habeas petitioner must also satisfy a high standard

to challenge successfully a state court's factual ruling:

> [U]nder AEDPA, "a determination of a factual issue
> made by a State court shall be presumed to be correct.
> The [petitioner] shall have the burden of rebutting the
> presumption of correctness by clear and convincing
> evidence."  28 U.S.C. § 2254(e)(1); see also Parsad v.
> Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("This pre-
> sumption of correctness is particularly important when
> reviewing the trial court's assessment of witness
> credibility.").  A state court's findings "will not be
> overturned on factual grounds unless objectively unrea-
> sonable in light of the evidence presented in the
> state-court proceeding."  Miller-El v. Cockrell, 537
> U.S. 322, 340, 123 S.Ct. 1029, 1041 (2003).

Tolentino v. Brown, 05 Civ. 9002 (GBD)(THK), 2009 WL 1347699 at

*7 (S.D.N.Y. May 5, 2009) (Daniels, D.J.) (adopting Report &

Recommendation of Katz, M.J.); accord Schriro v. Landrigan, 550

U.S. 465, 473-74 (2007) ("[The] AEDPA also requires federal

habeas courts to presume the correctness of state courts' factual

findings unless applicants rebut this presumption with 'clear and

convincing evidence.'"); Drake v. Portuondo, 553 F.3d 230, 239

(2d Cir. 2009); Lynn v. Bliden, 443 F.3d 238, 246-47 (2d Cir.

2006);  Mask v. McGinnis, 233 F.3d 132, 139 (2d Cir. 2000);

Nightengale v. Conway, 05 Civ. 1994 (GBD)(THK), 2009 WL 995178 at

*8 (S.D.N.Y. Apr. 13, 2009) (Daniels, D.J.) (adopting Report &

Recommendation of Katz, M.J.); see also Rosa v. McCray, 396 F.3d

210, 220 (2d Cir. 2005).  "The clear and convincing evidence

standard is somewhere between the preponderance of the evidence

standard and the proof beyond a reasonable doubt standard."

Bastien v. William, 03 Civ. 5749 (DLC), 2004 WL 2978283 at *4

(S.D.N.Y. Dec. 20, 2004) (Cote, D.J.), citing Addington v. Texas, 441 U.S. 418, 431 (1979). "The Second Circuit has interpreted this standard to require that the evidence support a conclusion with a 'high degree of certainty.'" Bastien v. William, supra, 2004 WL 2978283 at *4, quoting United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

To be entitled to the deferential standard of review under either sub-paragraph of subsection 2254(d), the state courts must have resolved the petitioner's claims "on the merits." Cotto v. Herbert, supra, 331 F.3d at 230; see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002) ("[I]n order for this deferential standard of § 2254 to apply, we must first determine that the state court considered [petitioner's claim] on its merits."); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).

The Second Circuit has instructed habeas courts to "classify" a state court decision as either: (1) "fairly appearing to rest primarily on federal law or to be interwoven with federal law"; or (2) "fairly appearing to rest primarily on state procedural law." Jimenez v. Walker, 458 F.3d 130, 145 (2d Cir. 2006). "If the state court's decision falls into the first category, and does not 'contain a clear statement of reliance on a state procedural bar,' the decision must be treated as having

32

been made on the merits." Mateo v. Fishkill Corr. Facility, 04 Civ. 3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007), quoting Jimenez v. Walker, supra, 458 F.3d at 138. To make this classification, habeas courts in this circuit examine "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." Jimenez v. Walker, supra, 458 F.3d at 145 n.16.

          For the reasons set forth above, the petitioner's claim that he was incompetent to enter his plea and that his counsel was ineffective by failing to request a competency hearing were not rejected on procedural grounds and must, therefore, be regarded as having been decided on the merits. Justice Newman rejected petitioner's remaining claim -- that his counsel was ineffective for failing to advise the Trial Court at the time of the plea that petitioner suffered from PTSD -- by citing the applicable Supreme Court precedent and discussing the claim in language that unquestionably addressed the substance of the claim (see 440.10 Dec'n at 8-9, annexed as Exhibit 13 to the Killian Aff.). Accordingly, all of petitioner's claims are subject to the AEDPA's deferential standard of review.

2.  Petitioner's Competence
    to Plead Guilty

        Petitioner's claim that he was not competent to plead

guilty raises a question of fact.  Demosthenes v. Baal, 495 U.S.

731, 735 (1990); Reed v. Duncan, 326 F. App'x 582, 584 (2d Cir.

2009); Francis S. v. Stone, supra, 221 F.3d at 114-15.  New

York's determination that petitioner was competent to plead

guilty must, therefore, be presumed correct unless petitioner

offers "clear and convincing evidence" that the state court's

decision was incorrect.  28 U.S.C. § 2254(e)(1).

        A guilty plea is "valid only if done voluntarily,

knowingly, and intelligently, with sufficient awareness of the

relevant circumstances and likely consequences."  Bradshaw v.

Stumpf, 545 U.S. 175, 183 (2005) (internal quotation marks

omitted).  The Court of Appeals for the Second Circuit has

summarized the factors to be considered in determining whether a

plea was validly entered:

> "[I]t is axiomatic" that the defendant must at least be
> competent to proceed.  United States v. Masthers, 539
> F.2d 721, 725 (D.C. Cir. 1976).  In addition, he must
> have an awareness of the true nature of the charge
> against him, see e.g., Henderson v. Morgan, 426 U.S.
> 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); have a
> "rational as well as factual understanding of the
> proceedings against him," Dusky v. United States, 362
> U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per
> curiam) (internal quotation marks omitted); and have
> knowledge of the nature of the constitutional

34

> protections he will forego by entering his plea, <u>John-son v. Zerbst</u>, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

<u>Oyague v. Artuz</u>, 393 F.3d 99, 106 (2d Cir. 2004).   <u>See also</u>

<u>Godinez v. Moran</u>, 509 U.S. 389, 398-99 (1993) (competence to

plead guilty is assessed by same standard used to determine

competence to proceed to trial); <u>Drope v. Missouri</u>, 420 U.S. 162,

171 (1975) ("[A] person whose mental condition is such that he

lacks the capacity to understand the nature and object of the

proceedings against him, to consult with counsel, and to assist

in preparing his defense may not be subjected to a trial");

<u>United States v. Garcia</u>, 282 Fed. App'x 14, 17 (2d Cir. 2008),

<u>cert</u>. <u>denied</u>, 129 S. Ct. 422 (2d Cir. 2008);

In his 440.10 motion, petitioner argued that his guilty

plea was invalid because he was suffering from PTSD and was

taking "four types of medications" at the time of the plea

(Petition ¶ 13).

During the plea allocution, petitioner's answers to the

Trial Court's questions reflected that petitioner understood the

questions that were asked of him, and petitioner told the Trial

Court that he had spoken with his defense counsel about the plea,

that he understood the elements of the offense to which he was

pleading guilty, and that he knew he was giving up the several

federal constitutional rights (Plea Tr. at 6-9, annexed as

Exhibit 2 to the Killian Aff.).  Petitioner's claim of incompe-

tence is, therefore, belied by the record, which reflects peti-

tioner's ability to understand the proceedings and their conse-

quences.  Oyague v. Artuz, supra, 393 F.3d at 106 (rejecting

petitioner's claim of incompetence due to mental health medica-

tion where petitioner's "express representations during the plea"

indicated his ability to understand the proceeding); Vaughn v.

United States, 04 Civ. 1055 (KMW), 2007 WL 3084969 at *3

(S.D.N.Y. Oct. 22, 2007) (Wood, D.J.) ("The Court's finding of

competence, coupled with Petitioner's on-the-record statements

affirming his understanding of the waiver, defeat Petitioner's

post hoc claim of incompetence."); see also United States v.

Couto, 311 F.3d 179, 186 (2d Cir. 2002), abrogated on other

grounds, Padilla v. Kentucky, 2010 WL 1222274 at *9 (U.S. Mar.

31, 2010) (Statements made during plea allocution "carry a strong

presumption of verity.")  Furthermore, it is of no moment that

petitioner answered nothing more than "Yes, Your Honor," when

questioned during the allocution.  "[A] straightforward and

simple 'Yes, your Honor' is sufficient to bind a defendant to [a

plea's] consequences."  United States v. Gardner, 417 F.3d 541,

544 (6th Cir. 2005); accord United States v. Torrellas, 455 F.3d

96, 103 (2d Cir. 2006) (Monosyllabic answers are sufficient to

establish that a defendant's guilty plea is voluntary.).

Finally, even if I consider the exhibits petitioner submitted in support of his 440.10 motion, which is the only material before this Court bearing on petitioner's mental health, it does not support even an inference that petitioner was unable to understand the charges against him at the time of his plea or was unable to consult with his attorney in meaningful manner.  A report from a certified social worker issued seven months after petitioner's plea reports that notwithstanding petitioner's PTSD, petitioner's thoughts were "well organized," and that although he did have flashbacks and nightmares concerning the events of September 11, 2001, he did not have hallucinations, he was "well oriented," and his insight and judgment were "adequate" (January 7, 2004 Evaluation of Robert J. Pitcher, CSW, attached as part of Exhibit 10 to the Killian Aff.)  A March 24, 2003 report from a social worker at Rikers Island reported the following concerning petitioner's efforts to address his addiction problems:

> Mr. Alexander exhibited motivation towards making a sincere commitment to change the negative behaviors and ultimately change his life.  Throughout his time in the [Rikers Island Substance Abuse Services Program,] Mr. Alexander attended and participated in all mandatory groups, seminars and weekly individual counseling programs.
>
> Mr. Alexander expressed an understanding of the circumstances and situations, which led to his active substance abuse.

(March 24, 2003 Evaluation of Amy June Harris, MSW, attached as part of Exhibit 10 to the Killian Aff.)  Although these documents do confirm that petitioner had PTSD in 2003, none of them remotely suggest that the disorder was of such severity that he was unable to understand the charges against him, unable to consult with his attorney in a meaningful manner or unable to understand the nature of what he was doing when he pleaded guilty.

Therefore, based on the record of petitioner's plea allocution, and even considering the material petitioner submitted in support of his state collateral attack, I conclude that there is no evidence and certainly no clear and convincing evidence to rebut the finding of New York's courts that petitioner was competent to enter a guilty plea.  This claim should, therefore, e denied.

### 3.  Ineffective-Assistance-of-Counsel Claim

Petitioner next claims that his counsel was ineffective for failing to apprise the Trial Court of petitioner's mental disorder and failing to seek a competency hearing.

In order to prevail on an ineffective-assistance-of-counsel claim, a habeas petitioner must meet the now-familiar,

38

two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S.

668, 686-87 (1984).

> The benchmark for judging any claim of ineffectiveness
> must be whether counsel's conduct so undermined the
> proper functioning of the adversarial process that the
> trial cannot be relied on as having produced a just
> result.

*        *        *

> A convicted defendant's claim that counsel's
> assistance was so defective as to require reversal of a
> conviction . . . has two components.  First, the defen-
> dant must show that counsel's performance was defi-
> cient.  This requires showing that counsel made errors
> so serious that counsel was not functioning as "coun-
> sel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose
> result is reliable.  Unless a defendant makes both
> showings, it cannot be said that the conviction . . .
> resulted from a breakdown in the adversary process that
> renders the result unreliable.

<u>Accord</u> <u>Greiner v. Wells</u>, 417 F.3d 305, 319 (2d Cir. 2005); <u>Aeid</u>

<u>v. Bennett</u>, 296 F.3d 58, 62-63 (2d Cir. 2002); <u>Hernandez v.</u>

<u>United States</u>, 202 F.3d 486, 488 (2d Cir. 2000); <u>Guerrero v.</u>

<u>United States</u>, 186 F.3d 275, 281-82 (2d Cir. 1999); <u>McKee v.</u>

<u>United States</u>, 167 F.3d 103, 106-07 (2d Cir. 1999); <u>Jackson v.</u>

<u>Leonardo</u>, 162 F.3d 81, 85 (2d Cir. 1998).

In determining whether counsel's performance was

objectively deficient, courts "must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable

39

professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, supra, 466 U.S. at 689 (internal quotation marks omitted).

The second prong of the test -- actual prejudice -- requires that a habeas petitioner show that but for trial counsel's errors, there is a "reasonable probability" that the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, supra, 466 U.S. at 694.

Because the test is conjunctive, a habeas petitioner's failure to satisfy either prong requires that the challenge to the conviction be rejected. Strickland v. Washington, supra, 466 U.S. at 697.

Petitioner's two specifications of ineffective assistance -- that his trial counsel should have advised the trial court that petitioner suffered from a mental disease or defect and should have requested a competency hearing -- fail because petitioner has not offered any evidence or argument suggesting that either the disclosure of his PTSD and medications or the holding of a competency hearing would have altered the outcome of

40

the proceedings.  As Justice Newman noted in her decision denying

petitioner's 440.10 motion, in the course of taking petitioner's

plea she conducted a searching voir dire to ensure that peti-

tioner knew and understood what he was doing and the rights he

was giving up; she asked petitioner whether he understood the

proceedings and whether he had any questions, and petitioner's

answers to all of Justice Newman's questions were appropriate and

he did not request that any questions be repeated or rephrased

(440.20 Decision at 9, annexed as Exhibit 13 to the Killian

Aff.).  In addition, as set forth in Section III.B.2., above, the

reports of social workers who examined petitioner before and

after his guilty plea do not suggest the existence of any disor-

der so severe that it would have rendered petitioner incompetent

to plead guilty nor do they even note any facts that suggest a

need for a hearing.  Finally, petitioner's attorney does not cite

any symptoms that would suggest incompetence.  To the contrary,

the affidavit of petitioner's attorney leaves no doubt that

petitioner's plea was the product of a rational assessment of the

evidence against him (see Herland Aff. ¶¶ 9, 18).  Given the fact

that not all mental diseases or defects are necessarily so

disabling as to render a defendant unable to enter a guilty plea,

there is no reasonable probability that either counsel's calling

petitioner's PTSD to the attention of the Trial Court or ex-

pressly requesting a competency hearing would have even resulted
in a competency hearing or would have had any material impact on
the outcome of the proceedings.  See United States v. Zhou, 428
F.3d 361, 379 (2d Cir. 2005) ("A hearing to determine the mental
competency of a criminal defendant 'is required only if the court
has reasonable cause to believe that the defendant has a mental
defect rendering him incompetent.'" (internal quotation marks
omitted)); United States v. Nichols, 56 F.3d 403, 414 (2d Cir.
1995) ("[T]he Due Process Clause [does not] require[] a [compe-
tency] hearing in every instance; a hearing is required only if
the court has 'reasonable cause' to believe that the defendant
has a mental defect rendering him incompetent." (citations
omitted)); People v. Jermain, 56 A.D.3d 1165, 1165, 867 N.Y.S.2d
326, 328 (4th Dep't 2008)(same).

### 4.   Summary

        For all the foregoing reasons, I conclude that although
none of petitioner's claims are procedurally barred, they all
fail on the merits.  There is no evidence to rebut the state
court's conclusion that petitioner was competent to enter a plea
of guilty.  In addition, the state court's conclusion that
counsel was not ineffective is clearly correct and cannot,

therefore, be an unreasonable application of clearly established
Federal law.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect-
fully recommend that the petition be denied.

In addition, because Alexander has not made a substan-
tial showing of the denial of a constitutional right, I also
recommend that a certificate of appealability not be issued. 28
U.S.C. § 2253.  To warrant the issuance of a certificate of
appealability, "petitioner must show that reasonable jurists
could debate whether . . . the petition should have been resolved
in a different manner or that the issues presented were adequate
to deserve encouragement to proceed further."  Middleton v.
Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam)
(internal quotation marks omitted); see also Love v. McCray, 413
F.3d 192, 195 (2d Cir. 2005) (per curiam).  For the reasons set
forth above, I conclude that there would be no difference of
opinion among reasonable jurists that Alexander's federal rights
were not violated.

I further recommend that certification pursuant to 28
U.S.C. § 1915(a)(3) not be issued because any appeal from this
Report and Recommendation, or any Order entered thereon, would

43

not be taken in good faith.  See Coppedge v. United States, 369
U.S. 438, 445 (1962).

V.  Objections

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
William H. Pauley, III, United States District Judge, 500 Pearl
Street, Room 2210, and to the Chambers of the undersigned, 500
Pearl Street, Room 750, New York, New York 10007.  Any requests
for an extension of time for filing objections must be directed
to Judge Pauley.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS
**WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE
REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States
v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO
Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank
v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

44

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
         April 9, 2010

                                    Respectfully submitted,


                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies mailed to:

Mr. Victor Alexander
DIN No. 03-A-3641
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, New York   12788-1000[7]

Nancy D. Killian, Esq.
Assistant District Attorney
Bronx County
198 East 161st Street
Bronx, New York   10451

---

[7]The New York State Department of Correctional Services web
site indicates that petitioner has been released to parole
supervision.  Petitioner has not provided the Court with an
updated mailing address, and, therefore, I am mailing this report
and recommendation to petitioner's last known address.